UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| KENDALL SUMMERS an individual, | Case No: |
| Plaintiff, | Judge: |
| v. | Magistrate Judge: |
| STATE OF LOUISIANA, LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, as the political entity responsible for the Eastern Louisiana Mental Health System; and DR. REBEKAH GEE, | |
| Defendants. | |

## COMPLAINT

Plaintiff, KENDALL SUMMERS, an individual, by and through his undersigned counsel, hereby files this Complaint and sues the STATE OF LOUISIANA, LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, as the political entity responsible for the Eastern Louisiana Mental Health System, for damages and attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("Americans with Disabilities Act" or "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Rehabilitation Act" or "RA"), and Section 1557 of the Patient Protection and Affordable Care Act, 42 USC § 18116 *et seq.* ("Section 1557" or "ACA"); and sues DR. REBEKAH GEE under the ADA, Rehabilitation Act, and Section 1557 for injunctive and declaratory relief and attorneys' fees/costs and states as follows:

### JURISDICTION AND PARTIES

1. This is an action for damages and attorneys' fees/costs pursuant to the ADA, Rehabilitation

Act, and Section 1557, each of which are federal causes of action. This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the discrimination which is the subject of this action occurred in East Feliciana Parish, Louisiana.

3. Plaintiff, KENDALL SUMMERS, is a resident of the State of Louisiana.

4. MR. SUMMERS is a qualified individual with a disability under the ADA/RA/ACA. MR. SUMMERS has a psychiatric impairment that is in remission. Upon information and belief, MR. SUMMERS was a paranoid schizophrenia. However, as is discussed below, his condition is in remission.

5. MR. SUMMER is a qualified individual with a disability under the ADA/RA/ACA because he has a record of such an impairment.

6. Upon information and belief, to the extent MR. SUMMER is not a qualified individual with a disability under the ADA/RA/ACA, he is a person who Defendants regard as having such an impairment because he has been subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, one of his major life activities.

7. MR. SUMMERS is currently being held in the Eastern Louisiana Mental Health System ("ELMHS"), which is located at 4502 State Rte 951 in Jackson, Louisiana 70748.

8. MR. SUMMERS is currently being detained by the ELMHS without a legal basis.

9. Defendant STATE OF LOUISIANA, LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS is the political entity responsible for the operation of the Eastern Louisiana Mental Health System (hereinafter "Department of Health").

10. Defendant DR. REBEKAH GEE (hereinafter "GEE") is the secretary of the Department of Health, is the chief executive of that governmental entity, and is sued herein pursuant to the doctrine of *Ex parte Young*.

11. Defendants are responsible for complying with the obligations of the ADA/RA/ACA.

12. The Department of Health is a public entity and, as such, is subject to the ADA/RA/ACA.

13. GEE is the chief executive and is sued solely under the doctrine of *Ex parte Young* because she has the ability to enforce Orders issued by this Court.

14. All events giving rise to this lawsuit occurred in the State of Louisiana.

## COUNT I
## VIOLATION OF TITLE II OF THE ADA

15. MR. SUMMERS realleges and reavers paragraphs 1-14 as if they were expressly restated herein.

16. Upon information and belief, the Department of Health's employees/agents develop and provide the services offered at the ELMHS.

17. On or about June 17, 2003, the State of Louisiana filed a Bill of Information, charging MR. SUMMERS with attempted second-degree murder.

18. MR. SUMMERS was found not guilty by reason of insanity on the attempted second-degree murder charge and was committed to ELMHS for treatment on or about August 26, 2004.

19. Through inpatient treatment, MR. SUMMERS was able to overcome his psychiatric impairment, which is presently in remission.

20. On March 17, 2011, a mental competency hearing was held. Dr. Joseph Bolton, who is believed to be MR. SUMMERS' treating doctor at the ELMHS, was subject to direct

examination and cross examination.

21. On Mach 31, 2011, MR. SUMMERS appeared at another mental competency hearing. The Court found that MR. SUMMERS was "NOT DANGEROUS".

22. Further, based on "a finding that he doesn't have a mental illness or mental defect at this time", the Court ordered MR. SUMMERS released from ELMHS on conditional release, to participate in a Forensic Aftercare program. Essentially, even though he was never convicted of a crime and no longer had an active disability, MR. SUMMERS was subjected to probation.

23. Upon information and belief, MR. SUMMERS was released from ELMHS and spent approximately one month in the free world.

24. On July 22, 2011, Probation Office Thomas McCoy filed a pleading entitled "Motion and Order for Hearing to Revoke Probation." After several court hearings, MR. SUMMERS was arrested on July 20, 2011 for purportedly violating the terms of his probation. MR. SUMMERS was taken back to ELMHS.

25. On September 5, 2014, the trial court again issued an Order of Conditional Release. MR. SUMMER was released from ELMHS.

26. On July 24, 2014, the Forensic Division filed a probation termination and order of commitment.

27. Upon information and belief, this revocation was due to a positive drug screen that was caused by MR. SUMMERS' psychiatric medications.

28. Thereafter, MR. SUMMERS was again taken back to ELMHS.

29. On December 5, 2016, MR. SUMMERS' trial counsel filed a pleading entitled "Motion

and Order for Immediate Release from Custody on the Grounds that MR. SUMMERS had Not had His Conditional Release Revoked."

30. On March 22, 2018, after a Mental Status Hearing with Counsel, the Court granted the motion and Ordered MR. SUMMERS to be released with supervised probation.

31. Upon information and belief, MR. SUMMERS was released from ELMHS for approximately one week in 2018. However, MR. SUMMERS' probation was subsequently revoked and MR. SUMMERS was taken back to ELMHS.

32. To date, MR. SUMMER has not been released from ELMHS and no out-patient treatment program has been provided to MR. SUMMERS.

33. Upon information and belief, if Department of Health had out-patient treatment programs, services, or activities, it would enhance MR. SUMMERS' eligibility for accelerated release from ELMHS.

34. Upon information and belief, over the last few years MR. SUMMERS has made repeated oral requests to the Department of Health's employees/agents for reasonable accommodations from the ELMHS.

35. Despite his oral requests for release from ELMHS, MR. SUMMERS has not been released from the ELMHS.

36. On September 23, 2019, undersigned counsel physically mailed a reasonable accommodation/modification request letter from MR. SUMMERS to the Department of Health.

37. In his reasonable accommodation request letter, MR. SUMMERS stated and requested the following:

My name is Kendall Summers. I am a person with a disability, namely, a psychiatric impairment that is in remission. On June 17, 2003, I was charged with attempted murder in the Second degree. I was deemed unfit to stand trial and was sent to the Eastern Louisiana Mental Health System.

Through inpatient treatment, I have overcome my disability. My psychiatric impairment is presently in remission. Indeed, this has been true as far back as March of 2011. Because my disability is in remission, the court Ordered my release from the Eastern Louisiana Mental Health System. Due to a false-positive of a drug screen, however, my probation was revoked, and I was sent back to the Eastern Louisiana Mental Health System. I presently remain at the Eastern Louisiana Mental Health System even though my disability is in remission.

Instead of developing a comprehensive out-patient treatment system or program for individuals with disabilities, the Louisiana Department of Health has chosen to warehouse individuals with mental disabilities, including myself, at the Eastern Louisiana Mental Health System. The Louisiana Department of Health's choice to warehouse individuals with disabilities instead of developing a comprehensive outpatient treatment system violates Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973. Indeed, in 1999 the Supreme Court issued its holding *Olmstead v. L.C.*, which held that states must eliminate unnecessary segregation of persons with disabilities and to ensure that persons with disabilities receive services in the most integrated setting appropriate to their needs. Despite this Supreme Court holding, and despite the fact that my disability is in remission, I remain confined to the Eastern Louisiana Mental Health System.

This letter constitutes a request for "reasonable accommodation / reasonable modification" under the Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973. Specifically, I request that the Louisiana Department of Health take the following steps to accommodate my disability:

- Develop a comprehensive outpatient treatment program for individuals with disabilities;

- Release me from the Eastern Louisiana Mental Health System while the above comprehensive outpatient treatment program is being developed.

- Assess what auxiliary aids/services I may need to function in an outpatient basis (e.g., personal assistant, medications, etc.) and ensure that I am provided these auxiliary aids/services on a consistent and regular basis.

- Adequate funding of the above system.

- Adequate training to the Louisiana Department of Health staff on accommodating individuals with disabilities, including psychiatric disabilities.

- Provide ongoing assessment of my needs as a person with a disability.

38. By and through the above letter, MR. SUMMER explained the nature of his disability, his limitations, and his needed accommodations.

39. Undersigned and MR. SUMMER received no response to MR. SUMMERS' request for reasonable accommodation/modification.

40. On October 4, 2018, having received no response from the Department of Health, undersigned re-sent the reasonable accommodation/modification request letter to the Department of Health.

41. This time undersigned sent the letter to the Department of Health's fax number. Undersigned received and has evidence that the fax was successfully transmitted.

42. To date—110 days later—Defendants have still refused to respond to MR. SUMMERS' request for reasonable accommodation/modification.

43. MR. SUMMERS remains at the ELMHS, even though he does not have an active psychiatric disability.

44. By and through this this action, MR. SUMMERS does not ask for release or seek the entitlement to such relief. Instead, MR. SUMMERS seeks for Defendants to be Ordered to comply with the ADA/RA/ACA, which would merely enhance MR. SUMMERS' eligibility for accelerated release from ELMHS.

45. Upon information and belief, Defendants have refused to confer with MR. SUMMERS' civil rights counsel or to respond to MR. SUMMERS' request for reasonable accommodation.

46. Instead of developing a comprehensive out-patient treatment system or program for individuals with mental disabilities, the Department of Health has chosen to warehouse

individuals with mental disabilities—and individuals who no longer have mental disabilities—at the ELMHS.

47. The Department of Health's choice to warehouse individuals with disabilities at the ELMHS instead of developing a comprehensive outpatient treatment system violates Title II of the Americans with Disabilities Act.

48. Defendants' ongoing failure to provide MR. SUMMERS with a reasonable accommodation and/or to provide out-patient treatment and/or housing was caused solely and proximately by the refusal of Defendants to comply with the requirements of the ADA/RA.

49. Defendants have also failed to provide MR. SUMMERS with equivalent educational opportunities as other individuals detained by the State of Louisiana. Upon information and belief, at the ELMHS, there are no college courses or advanced study opportunities for individuals such MR. SUMMERS.

50. In contrast, however, at other detention centers in Louisiana, the State of Louisiana provides advanced educational opportunities for individuals with disabilities. For example, at the Louisiana State Penitentiary, individuals can take classes through the Louisiana Technical College in subjects such as automotive technology, carpentry, culinary arts, graphic communication, horticulture, and welding. Defendants have failed to provide equivalent educational opportunities to individuals with disabilities who happen to be confined at ELMHS, including MR. SUMMERS.

51. By and through the facts set forth above, Defendants have utilized criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to

discrimination on the basis of disability.

52. By and through the facts set forth above, Defendants have failed to make reasonable modifications in their policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.

53. By and through the facts set forth above, Defendants have failed to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

54. By and through the facts set forth above, Defendants have failed to operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.

55. As is shown from the above, Defendants refused to engage in an interactive dialogue with MR. SUMMERS and his counsel.

56. 42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

57. Through their actions set forth above, DEFENDANTS have violated numerous sections of the ADA regulations implementing Title II of the ADA.

58. 28 C.F.R. § 35.150(a) specifically provided that "A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."

59. When viewed in its entirety, the Eastern Louisiana Mental Health System was not readily

accessible to or usable by MR. SUMMERS.

60. 28 C.F.R. § 35.130 provides that "(1) A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—

> (i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;
> 
> (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
> 
> (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;"

61. Pursuant to 28 C.F.R. § 35.130 (7) "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability...."

62. By and through the actions set forth above, MR. SUMMERS made numerous requests for reasonable modification of DEFENDANTS' policies, practices, or procedures, but these requests were routinely denied by DEFENDANTS. Accordingly, DEFENDANTS are also liable to MR. SUMMERS for violation of 28 C.F.R. § 35.130 (7).

63. By and through their choices, as outlined above, Defendants committed intentional discrimination.

64. By and through their failure to respond to MR. SUMMERS' requests for reasonable

accommodation/modification letters, Defendants committed intentional discrimination.

65. Defendants have been purposeful in their action and, thus, committed intentional discrimination.

66. Defendants were deliberately indifference to MR. SUMMERS' needs as a person with a disability.

67. Upon information and belief, as a result of the discrimination set forth above, MR. SUMMERS has suffered the following damages:

- Loss of potential enhanced eligibility for accelerated release;
- Past and future emotional distress, anxiety, and confusion;
- Loss of educational opportunities;
- Invasion of privacy;
- Invasion of his civil rights.

68. MR. SUMMERS demands a recovery of compensatory and nominal damages in this matter.

69. MR. SUMMER demands injunctive relief, including the development of a comprehensive outpatient treatment program for individuals with disabilities; assess of what auxiliary aids/services he may need to function in an outpatient basis (e.g., personal assistant, medications, etc.); the provision of those auxiliary aids/services on a consistent and regular basis; adequate funding of the above system; adequate training to the Louisiana Department of Health staff on accommodating individuals with disabilities, including psychiatric disabilities; and the provision of ongoing assessment of his needs as a person with a disability.

70. MR. SUMMERS has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from Defendant pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

71. MR. SUMMERS adopts and re-alleges the allegations contained in paragraphs 1-70 as if fully stated herein.

72. MR. SUMMERS brings this claim against Defendants, based upon the Rehabilitation Act, 29 U.S.C. §794, *et seq*.

73. The Rehabilitation Act provides that:

    No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).

74. As set forth herein, DEFENDANTS violated the Rehabilitation Act by intentionally discriminating MR. SUMMERS, solely by reason of his disabilities, in the Eastern Louisiana Mental Health System despite a holding that his disability is in remission.

75. Defendants' choice to warehouse individuals with disabilities at the ELMHS instead of developing a comprehensive outpatient treatment system violates the Rehabilitation Act of 1973.

76. Upon reasonable belief, Defendants are the recipient of federal funds.

77. As the recipient of federal funds, Defendants are liable for damages to MR. SUMMERS as a result of their acts and omissions constituting intentional discrimination.

78. As set forth above, MR. SUMMERS has been denied access to the services, programs, facilities, activities and accommodations offered by Defendants solely by reason of his disability, and has otherwise been discriminated against and damaged solely by reason of his disability as a result of Defendants' Rehabilitation Act violations set forth above.

79. MR. SUMMERS has been obligated to retain undersigned counsel for the filing and prosecution of this action. MR. SUMMERS is entitled to recover those attorneys' fees, costs and litigation expenses from Defendants pursuant to 29 U.S.C. §794(b).

**CLAIM III: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT**

80. MR. SUMMERS repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

81. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect, and applied to Defendant's conduct.

82. At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

83. For the reasons set forth above, at all relevant times MR. SUMMERS has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

84. At all times relevant to this action, Defendants received federal financial assistance, including Medicaid reimbursements, and were engaged in the provision of health care. Therefore, Defendants are operating health programs or activities receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

85. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

86. For the reasons fully set forth above, Defendants subjected MR. SUMMERS to discrimination, solely on the basis of disability, in violation of Section 1557, 42 U.S.C. § 18116.

87. Defendants discriminated against MR. SUMMERS by denying his requests for reasonable accommodations.

88. MR. SUMMERS is therefore entitled to seek and recover compensatory damages for the injuries and loss he sustained as a result of the Department of Health's discriminatory conduct as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

89. MR. SUMMERS is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## **REQUEST FOR JURY TRIAL**

90. MR. SUMMERS prays for a Jury trial on all issues which can be tried by Jury.

**PRAYER FOR RELIEF**

WHEREFORE, MR. SUMMERS prays that:

A. This Court awards monetary damages (compensatory and nominal), pursuant to Title II, 29 U.S.C. § 794a(a)2, and 45 CFR § 92.301 and for the harmed caused by the Department of Health.

B. This Court orders DEFENDANTS to develop a comprehensive outpatient treatment program for individuals with disabilities.

C. This Court orders DEFENDANTS to assess what auxiliary aids/services MR. SUMMERS may need to function in an outpatient basis (e.g., personal assistant, medications, etc.) and to ensure that MR. SUMMERS is provided these auxiliary aids/services on a consistent and regular basis.

D. This Court orders DEFENDANTS to maintain adequate funding of the above system.

E. This Court orders DEFENDANTS to provide adequate training to the Louisiana Department of Health staff on accommodating individuals with disabilities, including psychiatric disabilities.

F. This Court orders DEFENDANTS to provide ongoing assessment of MR. SUMMERS' needs as a person with a disability.

G. This Court orders DEFENDANTS to provide MR. SUMMERS with educational opportunities equivalent to those provided to non-disabled persons at other detention centers in Louisiana operated by the State of Louisiana.

H. This Court award of reasonable attorneys' fees, costs and litigation expenses pursuant to 29 U.S.C. § 794a(a)2 and 42 U.S.C. § 12205 and 28 C.F.R. § 35.175

and 45 CFR § 92.301.

I. Such other relief as the Court deems just and proper, and/or is allowable under the ADA, Rehabilitation Act, and Affordable Care Act.

> Respectfully Submitted,
>
> By:/s/ Garret S. DeReus
>
> BIZER & DEREUS, LLC
> Attorneys for Plaintiff
> Andrew D. Bizer (LA # 30396)
> andrew@bizerlaw.com
> Garret S. DeReus (LA # 35105)
> gdereus@bizerlaw.com
> Emily A. Westermeier (LA#
> ewest@bizerlaw.com
> 3319 St. Claude Ave.
> New Orleans, LA 70117
> T: 504-619-9999; F: 504-948-9996

16