UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENDALL SUMMERS** | **CIVIL ACTION** |
| VERSUS | |
| | **NO. 20-21-JWD-SDJ** |
| **STATE OF LOUISIANA,** **LOUISIANA DEPARTMENT** **OF HEALTH AND HOSPITALS, ET AL.** | |

*CONSOLIDATED WITH*

| | |
|---|---|
| **STORM ERIE, ET AL** | **CIVIL ACTION** |
| VERSUS | |
| | **NO. 20-289-JWD-SDJ** |
| **STATE OF LOUISIANA** **DEPARTMENT OF HEALTH** **AND HOSPITALS, ET AL.** | |

*CONSOLIDATED WITH*

| | |
|---|---|
| **IVORY AMOS, ET AL** | **CIVIL ACTION** |
| VERSUS | |
| | **NO. 20-386-JWD-SDJ** |
| **STATE OF LOUISIANA,** **DEPARTMENT OF HEALTH** **AND HOSPITALS, ET AL.** | |

*CONSOLIDATED WITH*

| | |
|---|---|
| **CHRISTOPHER CAMPBELL, ET AL** | **CIVIL ACTION** |
| VERSUS | |
| | **NO. 20-580-JWD-SDJ** |
| **STATE OF LOUISIANA,** **LOUISIANA DEPARTMENT OF** **HEALTH, ET AL.** | |

**ORDER**

Before the Court is a Motion to Compel (R. Doc. 41) filed by Plaintiff Kendall Summers on January 26, 2021. Plaintiff's Motion seeks an order compelling Defendants "to provide substantive responses" to three Requests for Production previously propounded on Defendants.[1] Defendants oppose this Motion, filing their Opposition on February 19, 2021 (R. Doc. 45), with Plaintiff subsequently filing his Reply, with leave of Court, on February 22, 2021 (R. Doc. 47). As discussed below, Plaintiff's Motion is granted in part and denied in part.

**I.    FACTUAL BACKGROUND**

Because the question of whether the requested information is relevant to this case, a brief background of the litigation is helpful here. Plaintiff filed suit against the State of Louisiana, through the Department of Health and Hospitals ("LDH") as well as the Secretary of the LDH on January 10, 2020.[2] Plaintiff is a psychiatric patient residing at East Louisiana Mental Health System ("ELMHS"), a state psychiatric hospital.[3] Through inpatient treatment at ELMHS, Plaintiff was able to overcome his psychiatric impairment, but remains detained at ELMHS.[4] Three other similar cases have been filed in this Court by patients residing at ELMHS.[5] Plaintiff asserts that all four patients who filed suit against the LDH, including himself, are qualified individuals with a disability under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Affordable Care Act ("ACA").[6] As alleged by Plaintiff, LDH has failed to develop sufficient community-based treatment options for ELMHS residents, as

---

[1] R. Doc. 41 at 1.
[2] R. Doc. 1 at 1.
[3] R. Doc. 41-1 at 3.
[4] *Id.* at 3-4.
[5] The three other cases are 3:20-cv-00386-JWD-SDJ, 3:20-cv-00289-JWD-SDJ, and 3:20-cv-00580-JWD-SDJ, and all four have been consolidated for all purposes except trial. (R. Doc. 53).
[6] *Id.* at 3-4

mandated by *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) and required under the ADA.[7]

Plaintiff's counsel, on September 23, 2019, sent a reasonable accommodation request letter to LDH on behalf of Plaintiff.[8] This request, along with others made by said counsel on behalf of the plaintiffs involved in the consolidated suits, "requested accommodations includ[ing] adequate funding of LDH, the development of an outpatient treatment program, training of LDH staff on accommodating patients with disabilities, the ongoing assessment of Plaintiffs' needs as individuals with disabilities, and the release of Plaintiffs while a comprehensive outpatient system was being developed."[9] While LDH provided a response to some of the requests for accommodation/modification, it did not respond to Plaintiff's request.[10] Plaintiff resubmitted his request on October 2, 2019, which request also did not receive a response.[11]

Plaintiff then filed the instant litigation on January 10, 2020, alleging violations of Title II of the ADA, Section 504 of the RA, and Section 1557 of the ACA.[12] Suits by the other patients referenced above followed shortly thereafter.[13]

## II.    LEGAL STANDARD

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the

---

[7] *Id.* 4-5.
[8] *Id.* at 5.
[9] *Id.* at 6. While Plaintiff uses the plural term "Plaintiffs" in his briefing, presumably including the plaintiffs from the other cases that have been consolidated with this one, Plaintiff's Motion to Compel states that only Plaintiff Summers is bringing the Motion before the Court. (R. Doc. 41 at 1). As such, the Court will continue to refer to Plaintiff in the singular.
[10] *Id.*
[11] *Id.*
[12] R. Doc. 1 at 1.
[13] R. Doc. 41-1 at 6-7.

action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party." *Tingle v. Hebert*, No. 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) (quoting *Fraiche v. Sonitrol of Baton Rouge*, No. 08-392, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010)) (internal quotations omitted).

The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a)(1). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

A party must respond or object to requests for production. *See* Fed. R. Civ. P. 34(b)(2). If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be

treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). "In sum, a party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (internal quotations and citation omitted).

The party filing the motion to compel "bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tingle*, 2016 WL 7230499, at *2 (quoting *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 13-419, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016)). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Id.* (quoting *Mirror Worlds*, 2016 WL 4265758, at *1). *See also Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, at *1 (W.D. La. Apr. 13, 2016) ("Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections."). Further, "[a] trial court enjoys wide discretion in determining the scope and effect of discovery." *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) (citation omitted).

### III. PLAINTIFF'S REQUESTS FOR PRODUCTION

Plaintiff has moved to compel substantive responses to three Requests for Production, which seek the personnel file of a purported "bad actor" as well as documents relating to a

settlement agreement previously entered into by LDH in a separate litigation. Each of these requests is addressed, in turn, below.[14]

### A.     Request for Production No. 19

Plaintiff's Request for Production No. 19 makes the following request:

> Please produce a full copy of Mr. Hampton P.S. Lea, CEO's employee file. You may redact personal identification information (*e.g.*, his social security number, DOB) and remove materials that relate solely to his rate of pay, retirement benefits, or tax forms.[15]

Hampton Lea ("Lea"), a non-party, is the CEO of ELMHS.[16] Defendants objected to this request on the basis of relevance and argue that "Mr. Lea's right to privacy in his employment records should not be violated absent a showing … of the relevance of this request."[17]

The Court turns first to the issue of relevance. "To obtain non-party personnel records, the requesting party must demonstrate the particular relevance of the personnel records to the issue." *Clemons v. Dollar General Corp.*, No. 09-64, 2010 WL 1994809, at *5 (N.D. Miss. May 18, 2020) (citations omitted). The Court is mindful that "[d]iscovery should be allowed unless the party opposing discovery establishes that the information sought 'can have no possible bearing on the claim or defense of the party seeking discovery.'" *Ruffin v. BP Exploration & Prod., Inc.*, No. 20-334, 2021 WL 4060975, at *2 (E.D. La. Sept. 7, 2021) (quoting *Dotson v. Edmonson*, No. 16-

---

[14] The Court notes that, in their Opposition to the instant Motion to Compel, Defendants reference four motions to dismiss they previously had filed that were then pending before the Court, arguing "that the jurisdiction of this Honorable Court must be established before the Plaintiff can move to compel the production of documents." R. Doc. 45 at 5. However, all four motions were dismissed without prejudice on August 19, 2021 (R. Doc. 55), with one being refiled on September 23, 2021 (R. Doc. 57). However, as a motion to stay discovery has not been filed, and case law is clear that discovery may continue while a motion to dismiss is pending, particularly in a case like this in which substantial discovery has already been completed, the Court rejects this argument by Defendants and will not further address it herein. *See Valenzuela v. Crest-Mex Corp.*, No. 16-1129, 2017 WL 2778104, at *5 (June 26, 2017) (noting that a stay of discovery is not automatically granted when a motion to dismiss is pending and that "had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect").
[15] R. Doc. 41-1 at 8.
[16] *Id.* at 9-10.
[17] *Id.* at 8. The Court also notes the insufficiency of this and the other objections made by Defendants as they fail to explain whether responsive documents are being withheld. *See Lopez*, 327 F.R.D. at 580.

15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017)). More importantly, "[i]f relevance is in doubt, the court should be permissive in allowing discovery." *Id.* (citations omitted); *see also U.S. v. La.*, No. 11-470, 2012 WL 3726754, at *7 (M.D. La. Aug. 27, 2012) (recognizing "the broad scope of relevance"); *Smith v. Employers Mut. Cas. Co.*, No. 09-1039, 2011 WL 938359, at *2 (M.D. La. Mar. 16, 2011) ("[t]he ordinary presumption in discovery is in favor of broad disclosure").

As asserted in his Motion to Compel, "[i]n this case, Mr. Summers and other plaintiffs allege that they have been improperly warehoused and segregated at a decrepit psychiatric facility in rural Louisiana, in violation of the non-segregation requirements of the ADA and the Supreme Court's mandates in *Olmstead*."[18] To that end, Plaintiff argues that the information in Lea's personnel file is relevant because, given the allegedly decrepit and discriminatory conditions at ELMHS, "Plaintiffs are entitled to investigate what notice—if any—Mr. Lea had of the conditions at the facility he was stewarding" and "to know if Mr. Lea has been warned, disciplined, or sanctioned about conditions at ELMHS."[19] Additionally, Plaintiff argues that Lea's file is relevant based on his "direct role in reviewing and failing to respond to Plaintiffs' requests for reasonable accommodation," which were addressed to him.[20] Per Plaintiff, he is "entitled to know whether Mr. Lea received any training or education under the [ADA] that would equip him to (1) review Plaintiffs' requests for reasonable accommodation, (2) comply with the requirements of *Olmstead*, or (3) comply with the requirements of the ADA/RA at the ELMHS."[21]

The Court finds Plaintiff's arguments compelling and agrees that at least portions of Lea's personnel file are relevant here, particularly in light of the fact that courts consistently have

---

[18] R. Doc. 41-1 at 2.
[19] *Id.* at 10.
[20] *Id.*
[21] *Id.* at 10-11.

permitted disclosure of at least parts of personnel files in certain situations. For example, in Title VII litigation, where plaintiffs are required to demonstrate pretext and the status of the alleged harasser, courts frequently have allowed discovery of personnel files. *See, e.g., Braud v. Geo Heat Exchangers, L.L.C.*, 314 F.R.D. 386, 389-90 (M.D. La. 2016) (granting discovery of personnel files in Title VII litigation where information in personnel file was relevant to pretext); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) ("In Title VII litigation, in which plaintiffs are similarly required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files."). Along those same lines, here, Plaintiff has alleged violation of Title II of the ADA, necessarily including discrimination on the basis of disability, in his Amended Complaint.[22] As argued by Plaintiff, recovery under Title II requires notice of a violation. *See Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574-75 (5th Cir. 2018) (to recover under the ADA, plaintiff must show the discrimination was intentional, and intent requires the defendant have actual notice of a violation). The Court, therefore, finds Lea's personnel file generally discoverable in this situation.

However, the Court is mindful of Defendants' argument that "Plaintiff has not genuinely articulated any relevance in the entire personnel file of Steve Lea."[23] *See Estate of Saylor v. Regal Cinemas, Inc.*, No. 13-3089, 2015 WL 13841379, at *2 (D. Md. Apr. 24, 2015) ("While it is true that the scope of discovery in a federal civil rights action is especially broad, and that Plaintiffs' ADA claims add another layer of potentially relevant information to this case, the Court finds it improper to compel disclosure of everything contained in the Defendant deputies' personnel files without knowing exactly what the files contain."). While the Court finds that the identified information is relevant to the instant litigation, it is not aware of all of the information in Lea's

---

[22] *See, e.g.*, R. Doc. 56 at 4, 22.
[23] R. Doc. 45 at 7.

personnel file,[24] much of which may not be relevant.  As such, the Court will order production of any documents in Lea's personnel file related to his notice or awareness of conditions at ELMHS and/or ADA violations as well as any training or education Lea has had under the ADA, with the limitations detailed below.

Finding the specified information purported to be in Lea's personnel file relevant to the instant litigation, the Court now turns to the issue of Lea's privacy.  "Personal privacy and the confidentiality of personnel files are important public policy concerns."  *James v. Peter Pan Transit Mgmt., Inc.*, No. 97-747, 1999 WL 735173, at *11 (E.D.N.C. Jan. 20, 1999) (citing *Raddatz v. Standard Register Co.,* 177 F.R.D. 446, 447 (D.Minn.1997); *Whittingham v. Amherst College,* 164 F.R.D. 124, 127 (D.Mass.1995)).  "However, when a public policy interest weighs against disclosure, disclosure may nevertheless be required where: (1) material is clearly relevant; and (2) the need for disclosure is compelling because the information sought is not otherwise readily available."  *Id.* (citing *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105-06 (E.D.N.C. 1993)).[25]

While recognizing Lea's privacy rights, Plaintiff claims both that Lea's personal information is not being requested and that any remaining privacy concerns "are outweighed by the importance of the requested information and the gravity of these cases."[26]  To help protect Lea's privacy, Plaintiff seeks Lea's personnel file "with the most sensitive and private information redacted."[27]  In his Reply, Plaintiff further explains that he does not seek health insurance, FMLA

---

[24] Neither Party has identified all of the types of documents held in Lea's personnel file.

[25] In his Motion to Compel, Plaintiff applies a list of ten factors outlined in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973), a § 1983 concerning a police shooting.  However, the court in that case specified that when executive privilege is asserted, the factors were to be considered in balancing the public interest in the confidentiality of governmental information against the needs of a litigant to obtain data.  *Id.* at 344.  To the Court's knowledge, no executive privilege has been asserted here.  However, should the Court have applied the *Frankenhauser* factors, it would still reach the same conclusion set forth herein.

[26] R. Doc. 41-1 at 2.

[27] R. Doc. 41-1 at 9.

leave requests, and annual and sick leave documents, which need not be produced.[28] Plaintiff also states that "Defendants need <u>not</u> produce materials related to Mr. Lea's rate of pay, retirement benefits, or tax forms."[29] Given the Court's limitation of the documents to be produced to documents pertaining to notice of conditions at ELMHS and/or ADA violations as well as ADA training or education, as set forth above, combined with the agreement of Plaintiff to redact private, personal information and to not require the production of certain other personal documents delineated above, the Court finds that Lea's privacy rights are adequately protected. Further, "[i]n instances where non-party personnel files are relevant and may lead to admissible evidence, a protective order can help to mitigate the invasion of the privacy of the non-party." *Clemons*, 2010 WL 1994809, at *5 (citation omitted). Here, the Court has entered a Protective Order at the joint request of the Parties, "govern[ing] the production, use, and retention of confidential medical records or records which include Personally Identifiable Information of the Plaintiff or individuals who are not parties to this litigation" and requiring that such documents "be maintained in a secure manner."[30] As such, the Court finds Lea's privacy rights adequately protected here.

However, another set of privacy rights are potentially implicated by this document request. If prior reasonable accommodation requests are included in Lea's personnel file, such requests by non-parties likely will include personally identifying information and/or confidential medical information or records of those individuals. The Court reminds the Parties of the Protective Order governing documents produced in this case and instructs the Parties to comply with that Protective Order, redact any personally identifying information or confidential medical information for any non-party, and/or file such documents under seal, as needed.

---

[28] R. Doc. 47 at 6-7.
[29] *Id.* at 6.
[30] R. Doc. 20 at 2.

### B. Request for Production No. 22

Plaintiff's Request for Production No. 22 is as follows:

> Please produce a copy of any and all emails exchanged by Your attorneys with counsel for Plaintiffs in the case of *Cooper, et al. v. Rebekah Gee*, U.S.D.C. for the M.D. La., No. 3:14-00507-SDD-RLB, provided that said emails relate or pertain to Paragraphs 12 or 13 of the document attached hereto as Exhibit "B."[31]

In this request, as in Request for Production ("RFP") No. 24, discussed below, Plaintiff seeks documents related to a settlement agreement reached in a separate litigation, *Cooper v. Phillips*, No. 14-cv-507-SDD-RLB (M.D. La.), in which a settlement agreement was reached on or about September 1, 2016.[32] Specifically, Plaintiff seeks e-mail communications between counsel related to Paragraphs 12 or 13 of the Settlement Agreement, which provide as follows:

> 12. Within one hundred and eighty (180) days of this Order, Defendants shall confer and meet to develop a plan for providing less restrictive placement options in which NGRI and Incompetent Individuals can, with the appropriate permission of the criminal court, receive clinically appropriate competency restoration or mental treatment placement options. The parties will discuss potential legislative proposals to address needs or issues brought forth in this meeting. The implementation of any such plan shall be subject to concurrence of LDH executive management and budgetary appropriation by the legislature.
>
> 13. In developing the plan described in paragraph 12, Defendants shall coordinate a meeting of Defendants, Plaintiffs' counsel, Plaintiffs' expert, Dr. Joel Dvoskin, and any stakeholders Defendants deem necessary to discuss (a) needed research and analysis beyond that identified in the preceding paragraph, and (b) necessary elements of the strategic plan. Defendants shall consider, in addition to the funding of new placements identified in paragraph 18, opportunities to divert NGRI and Incompetency Individuals from the criminal justice system and to improve efficiencies in existing operations. To facilitate that meeting, Defendants, in addition to the information contained in paragraph 4 of this agreement, will provide to Plaintiffs' counsel relevant data in Defendants' possession regarding patient wait times and recidivism rates for persons placed on conditional release or returned to jail to stand trial after a determination that his or her competency has been restored.[33]

---

[31] R. Doc. 41-1 at 8.
[32] A copy of the Settlement Agreement is at R. Doc. 41-3.
[33] R. Doc. 41-3 at 9-10.

Defendants once again object to this request on the bases of privilege and relevance, arguing that communications related to settlement are privileged and that the *Cooper* case "has no apparent relevance to this case, except that the Defendant is the same."[34] In his Motion to Compel, though, Plaintiff clarifies that "the two requests for production at issue do not seek documents related to the negotiation or crafting of the *Cooper* settlement agreement," instead "seek[ing] documents that 'relate or pertain' to the DOH's substantive obligations set forth in paragraphs 12 and 13 of the *Cooper* agreement."[35] In their briefing, both Parties address this RFP in conjunction with RFP No. 24, discussed below. However, because they are separate requests, the Court addresses them separately here.

Plaintiff argues that the requested communications in RFP No. 22 are relevant to this litigation because "[t]he steps that the DOH took (or did not take) to develop alternative placement for individuals with disabilities—outside of simply warehousing them at ELMHS—is central to this case."[36] The Court agrees. However, as written, RFP No. 22 is overly broad in that it seeks e-mail communications between opposing counsel without any temporal limitations on those communications. Therefore, as written, this request can include email communications between counsel occurring before execution of the Settlement Agreement in the *Cooper* case and conceivably creating an ongoing obligation of production by Defendants if said communications are still continuing.[37] The Court is not willing to impose such a requirement at this time absent a show of its necessity. The Court notes that in his Reply, Plaintiff claims that he is "merely

---

[34] R. Doc. 45 at 10.
[35] R. Doc. 41-1 at 17. The Court takes a moment to note that Plaintiff is correct that there is no "settlement privilege." *See, e.g., Washington-St. Tammany Elec. Coop., Inc. v La. Generating, L.L.C.*, No. 17-405, 2019 WL 1950394, at *6 (M.D. La. May 1, 2019) (declining to find an implied settlement privilege prohibited discovery of settlement negotiations). Further, as Plaintiff has specified that he is not seeking documents pertaining to negotiations of the *Cooper* Settlement Agreement, the Court will not further discuss the issue of privilege, as it is not applicable here.
[36] *Id.* at 15.
[37] This is supported by Defendants' allegation in their Opposition that "Chief Judge Dick continues to maintain jurisdiction over the *Cooper* case and continues to monitor LDH's compliance with the agreement." R. Doc. 45 at 11.

seek[ing] documents that were created following the *Cooper* agreement."[38] However, this request does not contain this limitation. As such, the Court will deny this request as written.

### C.  Request for Production No. 24

Finally, Plaintiff's Request for Production No. 24 makes the following request:

> Please produce a copy of all research and analysis of less restrictive placement options that You conducted as required by the paragraph 12 of the settlement agreement in *Cooper, et al. v. Rebekah Gee*, U.S.D.C. for the M.D. La., No. 3:14-00507-SDD-RLB.[39]

And once again, Defendants object on the bases of relevance and privilege.[40] As stated above, Plaintiff argues this evidence is relevant because it pertains to the steps LDH did or did not take to develop alternative placement for individuals with disabilities like Plaintiff.[41] Plaintiff further argues that "[t]hese documents will likely show that Defendants could have provided additional community housing," and they also will "aid in the determination of the issue of notice and intentional discrimination."[42] Despite Defendants' objections, the Court finds the requested documents relevant.

In their Opposition, Defendants also allege that this RFP, in conjunction with RFP. No. 22, "appear[s] to be an effort by the Plaintiffs to circumvent the settlement agreement or to argue, in this case, that the Plaintiffs are entitled to monetary relief for Defendants' failure to comply with the terms of the *Cooper* settlement agreement," which, per Defendants, is inappropriate.[43] Defendants elaborate, stating:

> The Plaintiff clarified in his Motion to Compel that he is, in fact, gathering evidence of LDH's alleged compliance or non-compliance with the on-going settlement of a class action lawsuit, in which the Plaintiff is a class member. Plaintiff's argument

---

[38] R. Doc. 47 at 7.
[39] R. Doc. 41-1 at 8.
[40] *Id.*
[41] *Id.* at 15.
[42] R. Doc. 47 at 7.
[43] R. Doc. 45 at 10.

raises the possibility that this entire lawsuit, and the consolidated lawsuits, are raising claims and demands that are required to be brought in *Cooper*.[44]

As this issue is not currently before this Court, and as Defendants have provided no evidence of this assertion, the Court will not unnecessarily limit discovery that appears relevant to the current litigation. As Plaintiff seeks documents pertaining to LDH's efforts to provide less restrictive placement options, failure of which is the crux of Plaintiff's Complaint, the Court grants this request by Plaintiff.

IV.  **CONCLUSION**

Accordingly,

**IT IS ORDERED** that the Motion to Compel filed by Plaintiff Kendall Summers (R. Doc. 41) is **GRANTED IN PART** and **DENIED IN PART**. Within **21 days** of the date of this Order, Defendants are ordered to produce documents responsive to Plaintiff's Requests for Production Nos. 19 and 24, as instructed in this Order.

Signed in Baton Rouge, Louisiana, on September 24, 2021.

*/s/ Scott D. Johnson*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[44] *Id.* at 11.